## IN THE UNITED STATES DISTRICT COURT
### FOR THE  DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIVISIONS, INC. d/b/a DIVISIONS MAINTENANCE GROUP<br><br>vs.<br><br>ASPEN SPECIALTY INSURANCE COMPANY, EVERGREEN CONSOLIDATED, LLC d/b/a NICELY DONE LANDSCAPING, DOLGENCORP, LLC and NAIYM HICKERSON-COOPER | CIVIL ACTION<br><br>NO. |

### CIVIL ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
#### (Declaratory Judgment – Insurance)

Plaintiff Divisions, Inc. d/b/a Divisions Maintenance Group (hereinafter referred to as "Plaintiff" or "DMG"), by and through its undersigned counsel, hereby states as follows by way of Complaint against Defendants:

## 1.    THE PARTIES

1.    Plaintiff DMG is a corporation organized under the laws of the State of Kentucky with a principal place of business at 50 West 5th Street, Cincinnati, OH 45202, which regularly conducts business in the State of New Jersey and which is a citizen of the States of Ohio and Kentucky.

2.    Defendant Aspen Specialty Insurance Company (hereinafter referred to as "Aspen") is an insurance company that is a corporation or similar business entity that is licensed to and does issue insurance policies within the State of New Jersey, and regularly conducts business within the State of New Jersey, and has a principal place of business at 400 Capital Blvd., Ricky Hill, CT 06067, and is a citizen of the State of Connecticut.

3.      Defendant Evergreen Consolidated LLC t/a Nicely Done Landscaping (hereinafter referred to as "Evergreen") is a limited liability company, existing under the laws of the State of New Jersey, with a principal place of business located at 213 Liebig Avenue, Egg Harbor City, New Jersey 08215 and is a citizen of the State of New Jersey.

4.      Defendant Dolgencorp, LLC  (hereinafter referred to as "Dolgencorp") is a limited liability company or other business entity organized under the laws of the State of Kentucky and regularly does business in the State of New Jersey and is a wholly owned subsidiary of Dollar General Corporation that regularly conducts business within the State of New Jersey and which owns and operates a number of Dollar General Stores, including the Dollar General Store located at 706 S. Delsea Dr., Clayton, NJ, and is a citizen of the State of Kentucky.

5.      Defendant Naiym Hickerson-Cooper (hereinafter referred to as "Underlying Plaintiff" or "Plaintiff in the Underlying Matter") is an individual citizen of the State of New Jersey and resides at 728 Cheltenham Avenue, Galloway, NJ 08205 and is the Plaintiff in the Underlying Matter, identified in further detail below.

## II.    JURISDICTION AND VENUE

6.      This is an action for declaratory judgment and is brought pursuant to the New Jersey Declaratory Judgments Act, N.J. Stat. §2A:16-52, et seq. and Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. for the purpose of determining a question and actual controversy between the parties as described in detail herein, particularly, to determine the rights and obligations of the parties under a contract of insurance.

7.      This Honorable Court has subject matter jurisdiction over this matter via supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that the claims in this matter are so related to claims asserted in the Underlying Action (identified and referred to below) pending in this Honorable Court within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in this Honorable Court, pursuant to 28 U.S.C. § 1391 as it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, and one or more of the Defendants are subject to the court's personal jurisdiction with respect to this action, and is where the underlying lawsuit that is the subject of this matter is pending.

9.      Plaintiff brings this Declaratory Judgment action to obtain a judicial determination that Defendant Aspen owes it defense and indemnity obligations with respect to the civil action captioned Naiym Hickerson-Cooper v. Dolgencorp, LLC., et al, filed by Underlying Plaintiff in the United States District Court for the District of New Jersey and docketed at 1:22-cv-05755-RMB-EAP (hereinafter referred to as the "Underlying Action" or "Underlying Lawsuit").    A copy of the First Amended Complaint filed in the Underlying Action is attached hereto as Exhibit "A."

10.     Plaintiff is entitled to a declaration that Aspen owes it defense and indemnity obligations with respect to the Underlying Lawsuit, in that Plaintiff is an Additional Insured under the Commercial General Liability insurance policy issued by Aspen to Defendant Evergreen Consolidated, LLC d/b/a Nicely Done Landscaping.

### III.    THE APPLICABLE CONTRACTS

11.    At all times relevant, Plaintiff entered into and was party to a written contract (hereinafter referred to as "Main Contract") with Defendant Dogencorp, under which Plaintiff was to provide certain landscaping and/or snow and ice removal/management services as General Contractor pursuant to Work Orders in connection with a number of properties/premises owned and/or operated by Dogencorp, including the Dollar General store at 706 S. Delsea Drive, Clayton, NJ.  Copies of the Main Contract are not attached, in that their terms are not directly material to Plaintiff's claims herein.

12.    On or about December 15, 2020, a Work Order was issued known as "Work Order No. 6," effective November 1, 2020 and with a completion date of April 30, which was subject to the terms and conditions of the Main Contract.

13.    Pursuant to Work Order No. 6, Division's scope of work included certain services including but not limited to plowing snow, spreading salt and other de-icing agents and other snow maintenance services upon requests at certain Dollar Store locations, including the Premises at issue.

14.    At all times relevant, Plaintiffs subcontracted with Defendant Evergreen for the latter to perform all of Plaintiff's work under the Main Contract, including, but not limited to, all snow and ice removal services pursuant to Work Order No. 6.

15.    In particular, on or about June 8, 2020, Divisions entered into a written Master Provider Agreement with Evergreen, whereby Plaintiff retained Evergreen as a "Provider" for the purpose of providing repair, maintenance and installation services to certain clients of Plaintiff, in anticipation of subsequent entry into various "Service Agreements" for recurring

and non-recurring work.  A copy of Division's Master Provider Agreement with Evergreen is

attached hereto as Exhibit "B."

16.     Under Paragraph 4 of such Master Provider Agreement, the parties agreed:

> 4. **Work**. Provider shall perform and otherwise provide at its own cost all tools,
> equipment, materials and labor necessary necessary to complete the Work in accordance with
> the specifications of the applicable Service Agreement or other Contract Document. Provider
> shall cause any Work performed by it or any of Provider's subcontractors,
> subsubcontractors,material suppliers, and equipment suppliers (collectively, " Provider's Subs")
> pursuant hereto to be performed: (i) diligently and in a good and workmanlike manner using
> reasonable care and in strict accordance with all applicable federal, state and local statutes, laws,
> codes, regulations and ordinances including, without limitation, the EPA Clean Water Act, the
> Immigration Reform and Control Act of 1986, the Immigration and Nationality Act, the Illegal
> Immigration Reform and Immigrant Responsibility Act of 1996, all employers sanction regulations
> requiring all employers to complete Form I-9 according to the instructions issued by the
> Department of Homeland Security, the Health Safety Standards and Rules and Regulations of
> the Federal Occupational Safety and Health Act of 1970, all Equal Employment Opportunity Acts,
> all Americans with Disabilities Acts, and any successor statutes, laws, codes, regulations, and
> ordinance thereto; (ii) using that level of care and skill ordinarily exercised by contractors with
> expertise in providing services similar to the Work contemplated hereunder; (iii) in a timely
> manner, with time being of the essence; (iv) with an adequate number of properly trained
> personnel that are licensed to perform any trades they are performing; and (v) in accordance with
> any rules or regulations adopted by Divisions, Divisions' client and/or the Owner. If any services,
> materials, functions, or responsibilities not specifically described in the Contract Documents are
> required for, incidental to, implied by, or inherent in the proper performance and provision of the
> Work, they shall be deemed to be included within the Work as if specifically described in this
> Agreement or the applicable Service Agreement.. . .

See Exhibit "B."

17.     Further, and pursuant to the Master Provider Agreement, on or about

December 15, 2020, Divisions and Evergreen entered into a Snow Service Agreement for the

Premises with a start date of October 1, 2020 and an ending date of May 31, 2021, which

required Evergreen to provide snow removal services at the subject Premises.  A copy of the

Snow Service Agreement is attached hereto as Exhibit "C."

18.     As part of such Snow Service Agreement, Defendant Evergreen agreed to

perform snow removal services as follows:

### Scope of Work

1. GENERAL REQUIREMENTS. Provider will visit the Locations and perform snow
removal services at a prescribed interval listed below. Provider will provide snow
removal services to Divisions that meet federal, state, and local regulations. Divisions
prefers snow removal be performed before the Locations open for Locations that incur

overnight minimum snow fall required for service. Billing, Reporting and Communication Provider will verify arrival at location through Divisions In-Position App. Payment will be directly tied to the provider's ability properly checking in/out. In an event where a provider cannot check in due to having no cell phone service, or app malfunction they are to immediately contact Divisions. Provider will be required to report prior to completing service, via e-mail or phone (addresses/number will be provided by Divisions), any issues that are outside normal scope of work and may lead to excessive costs. Pre-Season/Post Season Requirements: The Provider is responsible for documenting conditions of any and all curbs, landscaping, building, and/or dumpster enclosure prior to the snow season. Taking the additional steps to assess and document these areas will provide you with the condition of the property prior to the first event of the snow season. Without proper documentation, the Provider agrees to repair at their own expense any/all damaged areas of the property that have occurred as a result of the plowing services. Examples of such damage include but are not limited to curbing, landscaping, and damage to buildings and dumpster enclosures. An additional post inspection is also required upon conclusion of the last snow event of the season. This inspection should include confirmation of post season cleanup, removal of any marking/locators on the property as well as a detailed inspection of conditions of property including curbs, landscaping, building and/or dumpster enclosures. The Post Inspection should be compared to the Pre-Season Inspection and any damage should be immediately reported to the Divisions, Inc. District Manager. Divisions, Inc. in its sole discretion, reserves the right to withhold payment and offset for any damage resulting from services not properly repaired.

2. TYPICAL SERVICE REGIME. Provider must plow the lot in a way to keep customer traffic to the store open and at the same time maintain access for delivery trucks to make deliveries to the store's receiving area. Mounds of snow should not impede access to front customer parking, customer entrances, sidewalks, receiving door area, or delivery truck's path to receiving door area. Mounds of snow should not be piled on adjoining properties. Sidewalks are included in this No snow should be pushed or piled in front or alongside of the store where customers park. No snow should be push or piled to block drains, or well heads. Provider shall also not locate snow piles into bodies of water (lakes, ponds, streams, wetlands, storm-water management ponds etc...). Provider should spread salt on the parking lot and de-icing agents on sidewalks when needed for business hours to help prevent the buildup of ice during business hours. Remove new snow prior to adding salt. Do not apply salt if temperature will not remain below freezing for more than 1 hour during business hours. Divisions will only authorize two billable salting per calendar day. In an event where the provider will need more than two billable salting's the provider will be required to receive authorization from Divisions. Provider also must receive permissions from Divisions before pre-salting

Pricing includes all materials, parts, labor, and disposal of any associated items required to properly perform services in accordance with all federal, state, and local regulations.

Per Push: During business hours, the parking lot is to be plowed every time there is a 3-inch accumulation. This service must be performed before the snow accumulation exceeds 4 inches of snow. All the parking lots will be plowed with professional quality plowing equipment.

3. Provider will verify arrival at location through Divisions In-Position App. Payment will be directly tied to the provider's ability properly checking in/out. In an event where a provider cannot check in due to having no cell phone service, or app malfunction they are to immediately contact Divisions.

## Areas of Service

Parking Lot, Drive Lanes, Entrances, Sidewalks, Loading Dock, Additional Access Road/Ring

\*\*\*

**Snow and Ice Removal:** Snow and Ice removal shall be completed as weather conditions require. Provider shall determine, in its discretion, the minimum amount of salt necessary and the amounts to utilize to provide a safe customer experience. Provider shall use only approved methods of ice removal based on the specific requests of Divisions, Inc. See Scope of Work for additional detailed requirements for ice removal for this location.

**Plowing:** Snow plowing must be performed per the site plowing plan. Snow may only be stored in locations designated on the site map or by the Divisions, Inc. District Manager. Provider will not pile snow near the building, near light poles, or handicap areas and will ensure that fire hydrants are visible and serviceable and emergency exits are kept clear.

**Walkway, Entrance, and Misc. Areas Shoveling:** Areas to be shoveled (if applicable) include building entrances, walks around building, and any other location that is noted on the site map. See Scope of Work for detailed requirements for this location.

**Snowfall:** In the event of disputed snowfall or icefall levels, Provider and Divisions agree that all invoices will be based on the snowfall/icefall as reported by Weather works for the zip code of the property service location.

See Exhibit "C".

19.    Paragraph 10 of the Master Provider Agreement provides:

. . . Prior to commencing the Work as described herein Provider shall, at its own expense, secure, and maintain during the term of this Agreement (including the Warranty Period) all of the insurance required under the Prime Contract or with minimum limits of liability and coverage as stated below, whichever is greater:

i. General Liability Insurance. Comprehensive General Liability or Commercial General Liability insurance utilizing Insurance Services Organization (ISO) Forms CG 00 01 1001 or CG 00 0104 13 or an equivalent covering all operations by or on behalf of Provider, providing insurance for bodily injury liability and property damage liability for the limits of liability and including coverage for Provider's premises and operations, products and completed operations, contractual liability insuring the obligations assumed by Provider in this Agreement, broad form property damage (including completed operations), explosion, collapse and underground hazards, and personal injury liability. ANY WORK INVOLVING EXTERIOR INSULATION FINISHING SYSTEMS (EIFS) OR SIMILAR SYSTEM SHALL NOT BE EXCLUDED FROM GENERAL LIABILITY COVERAGE PROVIDED BY PROVIDER AND/OR PROVIDER'S SUBCONTRACTORS. Completed Operations coverage will be maintained for two (2) years after Project completion.

a. Limits of overage should be provided in amounts not less than:
> $1,000,000 per occurrence (Bodily Injury and Property Damage)
> $1,000,000 products and completed operations aggregate
> $1,000,000 general aggregate that applies on a per Project basis
> $1,000,000 personal and advertising injury

b. Additional Insured. Provider's General Liability policy shall name the Additional Insureds as additional insureds on a primary and non-contributory basis for ongoing and completed Work utilizing ISO form CG 2010 (07/04 or 04/13) and CG 2037 (07/04 or 04/13) or the combined equivalent. The "Additional Insureds" shall include all of the following: (i) Divisions' client for the applicable Project; (ii) the Owner for the applicable

Project; (iii) Divisions; (iv) any person or entity required by contract related to such Project; and (v) the respective directors, officers, employees, agents, affiliates, subsidiaries, and successors of the parties named in the immediately preceding subsections (i) through (iv). It is expressly agreed and understood by and between Provider and Divisions that the Insurance afforded the Additional Insureds shall be primary insurance and that any other insurance carried by Divisions shall be excess of all other insurance carried by Provider and shall not contribute with Provider's insurance. It is further agreed that Provider's General Liability coverage shall not include exclusion endorsement CG2294 (Exclusion-Damage to Work Performed by Subcontractor) or its equivalent.

See Exhibit "B."

20.    Paragraph 17 of the Master Provider Agreement provides:

17**. Indemnification.** Divisions and Provider agree that, to the fullest extent permitted by law, Provider shall indemnify, defend, and hold harmless Divisions, its clients and customers,, the Owner and all of their respective tenants, lessees, shareholders, members, managers, officers, directors, representatives, agents, other subcontractors, employees and any other person or entity claiming through them and any other person or entity acting in a similar capacity (collectively, "Indemnitees") from and against all claims, actions, demands, suits, judgments, damages, losses, awards, expenses and any other charges of any other kind (singularly, "Loss" and collectively, "Losses") including, but not limited to, reasonable attorney's fees that are alleged to or actually arise out of, relate to, or are incurred in connection, in whole or in part with:(a) the negligent or intentional acts or omissions of Provider, its agents, representatives, officers, directors, shareholders, members, managers, employees, subcontractors, material suppliers, equipment providers, or any other person or entity acting in a similar capacity on behalf of Provider; (b) the performance or non-performance of Provider's Work under this Agreement or the other Contract Documents; and/or (c) breach by Provider of any representation, warranty or other provision of this Agreement or the other Contract Documents, including but not limited to the enforcement of Provider's duty to defend and indemnify against Losses. By entering into this indemnification agreement, Provider expressly and specifically waives any workers' compensation immunity or any non-waivable rights to which it would otherwise have been entitled whether said immunity or rights are constitutional, statutory or otherwise. Provider's duty to defend or pay for the defense (including but not limited to legal representation) of any and all Indemnitees against potential Losses arises as soon as any of the named Losses are alleged to have occurred regardless of whether Provider intends to assert a defense against liability for such Losses and whether Provider is ultimately held not to be liable as a result of Provider's asserted defense. Divisions shall have the right to offset any amount owed to Provider under or in connection with this Agreement ("Offset") against any payments deemed owed to Provider by Divisions under this Agreement, including, without limitation, Offset for any indemnification deemed by Divisions to be due by Provider under this provision. In the event Divisions determines a Loss has occurred or Provider's insurance carrier has refused to accept written tender requesting indemnification or defense for any such Loss, in addition to any right of Offset, Divisions may withhold any amounts due Provider at the sole discretion of Divisions, not as a liquidated damage, but as an advance ("Advance") towards any indemnifiable amounts. Any Offset or Advance, as provided herein, shall be in addition to and in no way limit any other rights or remedies available under this Agreement and applicable law.

See Exhibit "B."

21.    Citing similar Indemnification and Insurance provisions contained within the

Main Contract in its favor, Dolgencorp had tendered its defense in the Underlying Action to

Plaintiff Divisions, who has accepted Dolgencorp's tender of defense, and is currently defending Dolgencorp in the Underlying Lawsuit.

**IV     THE INSURANCE POLICY**

22.    Upon information and belief, and as indicated on the Certificate of Insurance provided to Plaintiff, Defendant Aspen issued a Commercial General Liability Insurance Policy (occurrence-based, for Snow Removal operations) to Defendant Evergreen, Policy Number 2020101421, and effective 10/14/20 through 10/14/21 (hereinafter referred to as "Aspen Policy." See Certificate of Insurance attached hereto as Exhibit "D."

23.     Plaintiff is not in possession of a copy of said Policy; however, Defendant Aspen should be and is in possession of a complete copy of said policy, which is incorporated herein by reference as if set forth fully at length herein, and Aspen has cited various portions of said Policy in its denial of coverage letter to Plaintiff discussed in further detail below.

24.    Evergreen had produced to Plaintiff a Certificate of Insurance, issued by an authorized representative, demonstrating the existence of the Aspen Policy, a copy of which is attached hereto as Exhibit "D."

25.    Pursuant to the Certificate of Insurance, and presumably also the Declarations of the Aspen Policy, the policy provides, inter alia, Commercial General Liability (CGL) coverage with limits of $1 million per occurrence / $2 million general aggregate.  See Exhibit "D."

26.    Identified as "Certificate Holder" on the Certificate of Insurance is Plaintiff, Divisions, Inc.  Id.

27.     The Certificate of Insurance further states, under the Section titled "Description of Operations / Locations / Vehicles":

> This section must contain: "Divisions Inc. along with any other persons or entities required by written contract between the named insured and the certificate holder shall be listed as additional insured as respects to general liability and auto liability."

Id.

28.     Upon information and belief, the Aspen Policy identifies Plaintiff as an Additional Insured, either specifically by name or under a Blanket Endorsement such as "Additional Insured by Written Contract."

29.     As indicated in the provisions of the Subcontract referenced above, Evergreen was required in a written agreement to add Plaintiff as Additional Insured on its CGL and Excess insurance policies, including for completed operations coverage, and Plaintiff's own insurance policies were to be excess and/or noncontributing.

30.     Upon information and belief, Plaintiff Divisions, Inc. was or should have been identified as Additional Insured for Completed Operations either specifically by name or under a Blanket Endorsement such as "Additional Insured by Written Contract."

31.     Plaintiff is an Additional Insureds under the Aspen CGL Policy with respect to both ongoing operations and completed operations coverage.

32     As additional Insureds under such Policies, Plaintiff is entitled to the full rights and benefits of Defendant Aspen's obligations to defend and indemnify under the Policy.

33.     Plaintiff's rights under the Aspen Policy are primary and noncontributory with respect to any insurance that Plaintiff itself procured for its protection.

34.     The Aspen Policy may also contain other terms, conditions, endorsements or other language within the Policy itself of the Declarations which establish a right to full coverage on the part of Plaintiff for the Underlying Plaintiff's claims and which establish a duty to defend and indemnify Plaintiff on the part of Defendant Aspen.

35.     As indicated in the provisions of the Subcontract referenced above, Evergreen was required in a written agreement to add Plaintiff's client and the Project Owner, Dolgencorp, LLC,  as Additional Insured on its CGL and Excess insurance policies, including for completed operations coverage, and Dolgencorp, LLC's own insurance policies were to be excess and/or noncontributing.  See Exhibit "B" at paragraph 10.

36.     Upon information and belief, Dolgencorp, LLC was or should have been identified as Additional Insured for Completed Operations either specifically by name or under a Blanket Endorsement such as "Additional Insured by Written Contract."

37.     Dolgencorp, LLC is an Additional Insureds under the Aspen CGL Policy with respect to both ongoing operations and completed operations coverage.

38.     As additional Insureds under such Policies, Dolgencorp, LLC is entitled to the full rights and benefits of Defendant Aspen's obligations to defend and indemnify under the Policy.

39.     Dolgencorp, LLC's rights under the Aspen Policy are primary and noncontributory with respect to any insurance that Plaintiff itself procured for its protection.

40.     The Aspen Policy may also contain other terms, conditions, endorsements or other language within the Policy itself of the Declarations which establish a right to full coverage on the part of Dolgencorp for the Underlying Plaintiff's claims and which establish a duty to defend and indemnify Dolgencorp on the part of Defendant Aspen.

## V.      THE UNDERLYING ACTION

41.     Prior to September 28, 2022, Underlying Plaintiff Naiym Hickerson-Cooper commenced the Underlying Action in the New Jersey Superior Court against Defendants Dolgencorp, LLC; Divisions, Inc. d/b/a Divisions Maintenance Group, and a number of John Doe Defendants, which was docketed at ATL L 2347.22.

42.     The Underlying Action was thereafter removed to this Honorable Court by Notice of Removal filed by Dollar General Corporation on or about September 28, 2022.

43.     The Underlying Action is now captioned <u>Hickerson-Cooper v. Dolgencorp, LLC</u>, et al, and docketed in the United States District Court for the District of New Jersey at 1:22-cv-05755-RMB-EAP.

44.     The effective Complaint in the Underlying Action is Underlying Plaintiff's Amended Complaint, filed on 1/13/23.  A copy of said Amended Complaint is attached hereto as Exhibit "A"

45.     In the Amended Complaint in the Underlying Action, Underlying Plaintiff alleges that on or about December 17, 2020, she sustained serious and permanent personal injuries when she slipped and fell on the premises of Dolgencorp, LLC, located at 706 S. Delsea Drive, Clayton, New Jersey.   See Exhibit "A" at paragraph 5.

46.     In the Amended Complaint in the Underlying Action, Underlying Plaintiff further alleges:

7.    The aforesaid incident was caused by the hazardous conditions which the defendants, its agents, servants or employees, negligently created and/or maintained and/or failed to correct.

8.    At the aforesaid place and time, the defendants, its agents, servants, and/or employees, did cause, create, and/or maintain and/or fail to correct or warn of a hazardous condition on the premises of which its agents, servants and/or employees were aware or a reasonable inspection would have revealed the existence thereof.

9.    That said accident arose as a result of the negligence of the defendants, its agents, servants, and/or employees, and that said negligence is also inferable based upon the doctrine of res ipsa loquitur.

10.    At the aforesaid place and time, the defendants, its agents, servants, and/or employees negligently failed to provide a reasonably safe place for plaintiff to walk.

11.    That at all relevant times, the defendants had a duty to provide plaintiff with a reasonably safe place to walk and did negligently fail to take such actions to provide the plaintiff with a reasonably safe place to walk.

12.    At the aforesaid place and time, the defendants, its agents, servants, and/or employees, did negligently fail to provide such safety procedures, inspections and equipment which would have constituted the premises a reasonably safe place for the plaintiff to walk.

13.    Defendants were additionally careless and negligent in the care and maintenance of the premises at the time of the aforesaid incident causing the injury.

14.    As a result of the aforesaid conduct of the defendant, the plaintiff, Naiym Hickerson-Cooper, suffered serious personal injuries, would suffer severe physical and mental pain and suffering, was prevented from pursuing his usual activities, and has significant permanent disabilities that will similarly affect his life.

Id.

47.    In the course of Discovery in the Underlying Action, it was learned that the "hazardous conditions" alleged by Plaintiff in the Underlying Action to have caused his accident and injuries was, in particular, an alleged improper accumulation of or presence of snow and/or ice on the sidewalk at the premises, upon which he fell.

48.    Thereafter, following Leave of Court granted June 7, 2024 Plaintiff Divisions filed a Third-Party Complaint in the Underlying Action against Evergreen, on or about June 14, 2024.  A copy of said Third-Party Complaint is attached hereto as Exhibit "E"

49.    In the Third-Party Complaint against Evergreen, it is alleged:

1.    Plaintiff's Amended Complaint is incorporated herein, by way of reference only, with Divisions denying all liability for the allegations that on or about December 17, 2020, there existed a hazardous condition in the parking lot of the Dollar General retail store located at 706 South Delsea Drive in Clayton, New Jersey. *See* Plaintiff's Amended Complaint, attached hereto as **Exhibit "A". . . .**

3. Evergreen was, at all relevant times, responsible for the supervision, maintenance, care, and upkeep of the parking lot area and sidewalks for snow and ice treatment, removal, abatement, and mitigation at the aforementioned Dollar General store . . . .

6. On June 8, 2020, Divisions and Evergreen entered into a Master Provider Agreement, under which Evergreen was retained to provide repair, maintenance, and installation services to certain clients of Moving Defendant.

7. Under the Master Provider Agreement, Evergreen was obligated to name Divisions and Division's clients as additional insureds on its insurance policy and indemnify Divisions for any lawsuit arising out of work performed under the Master Provider Agreement.

8. On December 15, 2020, Divisions and Evergreen entered into a Snow Service Agreement for snow and ice removal services at the Dollar General store located at 706 South Delsea Drive, Clayton, New Jersey.

9. Under the Snow Service Agreement, snow and ice removal services were to be completed as weather conditions required, and Evergreen was required to determine and utilize the minimum amount of salt necessary to provide a safe customer experience.

See Exhibit "E."

50.     Thereafter in the Third-Party Complaint, Plaintiff asserts Counts of Negligence, Breach of Contract and Contractual Indemnification against Evergreen.  Id.

51.      In particular, with respect to the Negligence Count, it is alleged in the Third-Party Complaint:

> 12.     If the allegations contained in Plaintiff's Amended Complaint are established, said allegations being specifically denied by Divisions, then Evergreen has breached their duties owed to Divisions by negligently failing to inspect and/or provide ice removal services to provide a safe customer experience.

Id.

52.     Plaintiff and Dongencorp have each filed respective Answers to the Amended Complaint in the Underlying Action, denying all liability, and Evergreen has filed an Answer to the Third-Party Complaint, denying all liability.

53.     To date, Plaintiff has been defending itself in the Underlying Action with no funding of its defense by Evergreen or Aspen.

54.     Additionally, Plaintiff has agreed to defend and indemnify Dolgencorp, Inc. with respect to the Underlying Action, pursuant to the terms of its Main Contract, and has been funding the defense of Dolgencorp, Inc. in the Underlying Matter pursuant to its tender of defense.

## VI    REQUESTS FOR COVERAGE

55.     By correspondence sent prior to November 9, 2023, Michelle Lee, Plaintiff's representative at Third Party Administrator Broadspire sent a tender request on behalf of Plaintiff to Evergreen, requesting that it defend and indemnify both Plaintiff and Dolgencorp,

LLC with respect to the Underlying Litigation, pursuant to the terms of the Master Agreement and agreed-to status of Plaintiff and Dolgencorp as Additional Insureds under the Aspen Policy.

56.    By correspondence dated November 9, 2023, Dawn Krigstin of Defendant Apen insurance responded to said tender request, denying it on the following basis:

> Based on the previous correspondence from Broadspire, it seems that Divisions seeks to tender this claim to Evergreen pursuant to a services agreement Divisions entered into with Evergreen that was executed on December 15, 2020 ("Services Agreement"). The Services Agreement called for Evergreen to perform snow removal services at the Loss Location. The Services Agreement did not set forth any indemnity obligations; accordingly, we write to advise you that Aspen will not accept Broadspire's tender because there is no contractual obligation for Evergreen to assume liability pursuant to the Services Agreement.

Said correspondence is attached hereto as Exhibit "F."

57.    On or about December 14, 2023, counsel for Plaintiff sent another correspondence to Ms. Krigstin of Defendant Aspen, again requesting that it and/or Evergreen assume its defense and indemnify it with respect to the Underlying Action both pursuant to the indemnification provision of the Master Agreement and Plaintiff's status as Additional Insured on the Aspen policy, as required by the insurance provision of the Master Agreement. See correspondence attached as Exhibit "G."

58.    By email correspondence of February 20, 2024, Cortney Nascimento of Defendant Aspen responded to said tender request as follows, neither accepting the tender request nor denying it:

> Thank you for your letter dated, December 14, 2023.  A tender response to Michelle Lee of Broadspire was previously sent and I've attached same.  I understand the master agreement has now also been supplied and upon review, I do not note, in what fashion our insured was negligent, warranting defense and indemnification of Divisions considering our insured did not go out to the property to remove snow and/or ice on December 17, 2020, nor around that time.  If Nicely Done Landscaping LLC/Evergreen Consolidated LLC, simply did not show up to mitigate a weather situation, surely, they would have received a call or email

suggesting they did not show up and that their services were indeed needed. Our insured has no record of same. The contract calls for snow removal services after 3 inches of accumulation. As far as salting for icing events, our insured is to (also) determine treatment at their discretion. If their discretion was incorrect, Divisions would have then called them out to the property to treat any ice event or at the very least, sent an email suggesting same.

Additionally, as noted in the contract, confirmation of any weather events are to be confirmed via Weatherworks. Please supply the Weatherworks, certified report, for the correct zip code, if you feel our denial is not appropriate. Additionally, please forward any supporting emails, sent to our insured via Divisions on 12/17/20, which may indicate our insured simply did not show up on that date.

A copy of said e-mail correspondence is attached hereto as Exhibit "H."

59.     To date, Defendant Aspen has refused to accept Plaintiff's demands for defense and indemnity (and for recompensation for costs of defending and indemnifying Dolgencorp, LLC) with respect to the Underlying Action as an Additional Insured under its policy with Evergreen and/or have outright denied them.

60.     To date, neither Evergreen nor Aspen has agreed to defend or indemnify Plaintiff  with respect to the Underlying Action, and has not assumed the defense of Plaintiff as required by their obligations contained in the Master Agreement and under the Aspen Policy, nor have either otherwise acted in furtherance of or in accordance with such obligations.

61.     Defendant Aspen's denial and/or failure to accept the demands of Plaintiff, its Additional Insured, for defense and indemnity with respect to the Underlying Action are wrongful, improper, capricious, without sufficient legal or factual basis or justification, are contrary to its obligations as an insurer under the subject policy, are contrary to law, and have been made in bad faith.

62.     On or about November 5, 2024, counsel for Defendant Evergreen (retained by Aspen) indicated to Plaintiff's representative that Evergreen had exhausted its coverage limits for the policy period in which this claim falls and it no longer will be providing insurance coverage for Underlying Plaintiff's claims and that she would likely be withdrawing from the case as counsel for Evergreen.

63.     If Aspen has knowingly "exhausted its coverage for the policy period" -- indicating exhaustion of the $2 million General Aggregate Limits of Insurance on the Policy via the settlement and payment of other claims during the policy period while leaving no available coverage limits to defend or indemnify Plaintiff (or Evergreen) with respect to the Underlying Action (of which it is aware), said actions on the part of Aspen being herein alleged upon information and belief, then Aspen has acted in bad faith and in breach of the duty of good faith and fair dealing and fiduciary duty owed to its insureds, including Plaintiff.

## COUNT I – DECLARATORY JUDGMENT (DEFENSE)

### (Plaintiff v. Aspen)

64.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 63 above as if set forth fully at length herein.

65.     Under the terms of the CGL Coverage Part of the Aspen Policy, Plaintiff is an Additional Insureds and, as such, is entitled to a complete defense in to the Underlying Lawsuit from Defendant Aspen.

66.     The personal injuries and liability for the personal injuries allegedly sustained by the Underlying Plaintiff and his claims for such as asserted in the Underlying Action, are alleged in Underlying Plaintiff's Amended Complaint and Plaintiff's Third-Party Complaint

against Evergreen to have been arising from Defendant Evergreen's work (it's acts or omissions) performed for Plaintiff under the Master Agreement and Snow Services Agreement.

67.    The personal injuries and liability for the personal injuries allegedly sustained by the Underlying Plaintiff and her claims for such as asserted in the Underlying Action, are alleged to have been arising from and caused, in whole or in part by, the ongoing operations of Defendant Evergreen performed for Plaintiffs under the Master Agreement and Snow Services Agreement.

68.    It is not alleged in Underlying Plaintiff's Complaint or Third-Party Complaint that Underlying Plaintiff's alleged injuries occurred after all of Evergreen's work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations had been completed.

69.    It is not alleged in Underlying Plaintiff's Complaint or the Third-Party Complaint that Underlying Plaintiff's alleged injuries occurred when Evergreen's operations for Plaintiff were completed.

70.    As indicated in the Master Provider Agreement, Defendant Evergreen is required by written contract to procure liability insurance with Plaintiff as Additional Insureds, including completed operations coverage, and, in that regard, to provide primary noncontributory insurance coverage for Plaintiffs.  See Exhibit "B" at Paragraph 10.

71.    Plaintiff is an organization that Defendant Evergreen has agreed in a written contract requiring insurance to include as Additional Insured on its Liability coverage / Policy.

72.     The Underlying Plaintiff's Complaint and/or the Third Party Complaint allege that Underlying Plaintiffs' injuries and liability therefor arise from the acts or omissions of Evergreen and resulting directly from its ongoing operations / work performed for Plaintiff, which is the subject of the written contract or written agreement.

73.     Upon information and belief, the Aspen Policy contains declarations, endorsements or provisions that establish Plaintiff as Additional Insured under the Aspen Policy with regard to Underlying Plaintiff's claims in the Underlying Action.

74.     Plaintiff has complied with all conditions of coverage required under the Policy and/or Aspen has waived any conditions that which have not been complied.

75.     There are no provisions of the Aspen Policy that apply to exclude coverage to Plaintiff for the claims of Underlying Plaintiff.

76.     Given that the Master Agreement requires Evergreen to name Plaintiff as an Additional Insured on the their Policies and the terms of the Aspen Policy specifies that Plaintiff is Additional Insured and coverage as such is warranted to Plaintiff, Defendant Aspen owes Plaintiff a defense obligations with respect to the Underlying Action, and is thus required to defend Plaintiff in the Underlying Action.

WHEREFORE, Plaintiff Divisions, Inc. demands judgment in its favor and against Aspen Specialty Insurance Company in the nature of an Order:

A.     declaring that Plaintiff qualifies as an Additional Insured under the CGL Coverage Parts of the subject Aspen Policy;

B.     declaring that Defendant Aspen had / has the duty to defend Plaintiff with respect to the consolidated Underlying Action; and

C.      granting an award of damages representing defense and attorneys costs incurred to date, interest, attorneys' fees and costs of suit incurred in the prosecution of this matter and any other relief available at law or in equity to which the Honorable Court deems just or to which Plaintiff may show itself justly entitled to as a result of bringing this action.

## <u>COUNT II – DECLARATORY JUDGMENT -- INDEMNITY</u>

(Plaintiff v. Aspen)

77.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 76 above as if set forth fully at length herein.

78.     Under the terms of the CGL Coverage Parts of the subject Aspen Policy, Plaintiff is an Additional Insured under such policy, and, as such, is entitled to a complete indemnification from Aspen for any liability, judgments or settlements it is required to pay Underlying Plaintiff in the Underlying Lawsuit to the extent of the applicable per Occurrence Limits of Insurance.

79.     As indicated in the Master Provider Agreement, Defendant Evergreen is required by written contract to procure liability insurance with Plaintiff as an Additional Insured, and, in that regard, to provide primary noncontributory insurance coverage for Plaintiffs.  See Exhibit "B" at paragraph 10.

80.     Plaintiff is an organizations that Defendant Evergreen has agreed in a written contract requiring insurance to include as an additional insured on its Liability coverage / Policy.

81.     To the extent that any such liability is incurred by Plaintiff in the Underlying Lawsuit, liability for the personal injuries allegedly sustained by the Underlying Plaintiff

arises from Defendant Evergreen's work performed for Plaintiff in the under the Master Agreement.

82.    To the extent that any such liability is incurred by Plaintiff in the Underlying Lawsuit, liability for the personal injuries allegedly sustained by the Underlying Plaintiff  and his claims for such as asserted in the Underlying Action, are arising from and were caused, in whole or in part by, the ongoing operations of Defendant Evergreen and/or its performed for Plaintiff under the Master Agreement.

83.    To the extent that any such liability is incurred by Plaintiff in the Underlying Lawsuit, the personal injuries allegedly sustained by the Underlying Plaintiff  and her claims for such as asserted in the Underlying Action, occurred  prior to the completion of Evergreen's operations / work for Plaintiff.

84.    To the extent that any such liability is incurred by Plaintiff in the Underlying Lawsuit, the personal injuries allegedly sustained by the Underlying Plaintiff  and his claims for such as asserted in the Underlying Action, did not occur after all work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed.

85.    Upon information and belief, the Aspen Policy contains declarations, endorsements or provisions that establish Plaintiff as Additional Insured under the Aspen Policy.

86.    Plaintiff has complied with all conditions of coverage required under the Policy and/or Aspen has waived any conditions that which have not been complied.

87.    There are no provisions of the Aspen Policy that apply to exclude coverage to Plaintiff for the claims of Underlying Plaintiff.

88.    Given that the Master Agreement requires Evergreen to name Plaintiff as Additional Insured on the its Policies and the terms of the Aspen Policy specify that Plaintiff is Additional Insured and coverage as such is warranted to Plaintiff, Defendant Aspen owes Plaintiff indemnity obligations with respect to the Underlying Action, and is thus required to indemnify Plaintiff for any liability, judgments or settlements incurred with respect to the Underlying Litigation to the extent of the available Limits of Coverage under the CGL Coverage Part.

WHEREFORE, Plaintiff Divisions, Inc. demands judgment in its favor and against Aspen Specialty Insurance Company in the nature of an Order:

A.    declaring that Plaintiff qualifies as Additional Insured under the CGL Coverage Parts of the subject Aspen Policy;

B.    declaring that Defendant Aspen had / has the duty to indemnify Plaintiff for any liability, judgments or settlements incurred with respect to the consolidated Underlying Lawsuit to the extent of the available Limits of Coverage under the CGL Coverage Part; and

C.    granting an award of damages, interest, attorneys' fees, costs of suit associated with the prosecution of this coverage matter, and any other relief available at law or in equity to which the Honorable Court deems just or to which Plaintiff may show itself justly entitled to as a result of bringing this action.

## COUNT III – DECLARATORY JUDGMENT

(Plaintiff v. Evergreen and Naiym Hickerson-Cooper)

89.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 88 above, as if set forth fully at length herein.

90.    Defendant Evergreen Consolidated, LLC is named as Defendant in this Declaratory Judgment Action insofar as it is a Named Insured under the subject Aspen Policy, and, as such, may be deemed to be an interested party with respect to the construction of the insurance policy in question and are thus required to be parties to this Declaratory Judgment Action.

91.    Defendant Naiym Hickerson-Cooper is named as Defendant in this Declaratory Judgment Action insofar as he is the Plaintiff in the Underlying Action, and as such, she may be deemed to be an interested party with respect to the construction of the insurance policies in question and is thus required to be a parties to this Declaratory Judgment Action.

WHEREFORE, Plaintiff Divisions, Inc. demands judgment in its favor and against all other parties in the nature of an Order:

A.    declaring that Plaintiff qualifies as Additional Insured under the CGL Coverage Parts of the subject Aspen Policy;

B.    declaring that Defendant Aspen had / has the duty to defend Plaintiff in the Underlying Action;

C.    declaring that Defendant Aspen has the duty indemnify Plaintiff for any liability, judgments or settlements incurred with respect to the consolidated Underlying Lawsuit to the extent of the available Limits of Coverage under the CGL Coverage Part; and

D.     granting an award of damages, interest, attorneys' fees, costs of suit associated with the prosecution of this coverage matter, and any other relief available at law or in equity to which the Honorable Court deems just or to which Plaintiff may show itself justly entitled to as a result of bringing this action.

## <u>COUNT IV -- BREACH OF CONTRACT</u>

(Plaintiff v. Aspen)

92.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 91 above, as if set forth fully at length herein.

93.     The Aspen Policy amounts to a written contract between Aspen and its insureds, including Plaintiff, under which Defendant Aspen has agreed to provide certain insurance coverage in accordance with the terms of the Policy, to its insureds, including Plaintiff in exchange for payment of insurance premiums.

94.     At all times relevant, Evergreen made all required insurance premium payments under the policy, and Plaintiff has complied with all Conditions of Coverage under the Policy.

95.     Defendant Aspen's denial and/or failure to accept the demands of Plaintiff, its Additional Insured, for defense and indemnity with respect to the Underlying Action are wrongful, improper, and are in breach of the aforementioned insurance contract.

WHEREFORE, Plaintiff Divisions, Inc. demands judgment in its favor and against Aspen Specialty Insurance Company in the nature of an Order granting an award of damages, interest, attorneys' fees, costs of suit associated with the prosecution of this coverage matter,

and any other relief available at law or in equity to which the Honorable Court deems just or to which Plaintiff may show itself justly entitled to as a result of bringing this action.

### COUNT VI-- BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING / BAD FAITH

(Plaintiff v. Aspen)

96.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 95 above, as if set forth fully at length herein.

97.    At all times relevant Defendant Aspen, owed Plaintiff, its Additional Insured under a Policy of Insurance, a duty to act in Good Faith and in accordance with the Covenant of Good Faith and Fair Dealing.

98.    Defendant Aspen's denial and/or failure to accept the demands of Plaintiff, its Additional Insured, for defense and indemnity with respect to the Underlying Action are willfully wrongful, improper, capricious, without sufficient legal or factual basis or justification, are contrary to its obligations as an insurer under the subject policy, are contrary to law, are reckless and wanton and have been made in bad faith and are in breach of the Covenant of Good Faith and Fair Dealing and fiduciary duty owed to its insureds, including Plaintiff.

99.    Defendant Aspen lacks a reasonable basis for denying coverage to Plaintiff and Aspen has / has  knowledge or reckless disregard of the lack of reasonable basis for denying coverage to Plaintiff.

100.    If Aspen has knowingly "exhausted its coverage for the policy period" -- indicating exhaustion of the $2 million General Aggregate Limits of Insurance on the Policy via the settlement and payment of other claims during the policy period while leaving no

available coverage limits to defend or indemnify Plaintiff (or Evergreen) with respect to the Underlying Action (of which it is aware), said actions on the part of Aspen being herein alleged upon information and belief, then Aspen has acted in bad faith and in breach of the duty of good faith and fair dealing and fiduciary duty owed to its insureds, including Plaintiff.

WHEREFORE, Plaintiff Divisions, Inc. demands judgment in its favor and against Aspen Specialty Insurance Company in the nature of an Order granting an award of compensatory and punitive damages, treble damages, interest, attorneys' fees, costs of suit associated with the prosecution of this coverage matter, and any other relief available at law or in equity to which the Honorable Court deems just or to which Plaintiff may show itself justly entitled to as a result of bringing this action.

## JURY DEMAND

Divisions demands a trial by jury of all claims so triable.

## CERTIFICATION PURSUANT TO LOCAL RULE 201.1 (d)(3)

The undersigned, an attorney duly admitted to practice before this Court, certifies that the damages recoverable in this matter exceed the sum of $150,000 exclusive of interest and costs and any claim for punitive damages.

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

The undersigned, an attorney duly admitted to practice before this Court, certifies under penalty of perjury, that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding, other than

that similar/related facts and claims are at issue in the Underlying Action referred to in this

Complaint, <u>Hickerson-Cooper v. Dolgencorp, LLC, et al</u>, docketed in the United States

District Court for the District of New Jersey at 1:22-cv-05755-RMB-EAP.

      DATED this 14th day of November, 2024.

                **MINTZER SAROWITZ ZERIS & WILLIS PLLC**

                BY: ___*/s/ Steven N. Cherry*_____
                    STEVEN N. CHERRY, ESQUIRE
                    Attorney for Defendant, DIVISIONS MANAGEMENT
                    GROUP
                    1500 Walnut Street
                    Suite 1400
                    Philadelphia, PA 19102
                    215-735-7200
                    **MSZ&W File No.   8595.0001**